UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JIANGSU STEAMSHIP CO., LTD.

    Plaintiff,

    -against-                                      No. 14 Civ. 9997 (CM)

SUCCESS SUPERIOR LIMITED,

    Defendant.

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/30/15

## MEMORANDUM DECISION AND ORDER DENYING RECONSIDERATION AND UNSEALING FILINGS

McMahon, J.:

On January 6, 2015, the Court entered a sealed decision and order denying the petition of Jiangsu Steamship Company, Ltd. ("Jiangsu") to take discovery pursuant to 28 U.S.C. § 1782. ("Decision and Order," Docket #4.) In that decision I provided Jiangsu with "ten days to explain why this court should not release the entire decision, including the names of the parties, onto the public record." (Decision and Order at 14.) Jiangsu has filed a memorandum arguing that the Court's decision should remain under seal and seeking reconsideration of the Court's decision. (Docket #6.)

For the reasons stated below, the Court declines to reconsider the Decision and Order. In addition, both this opinion and the Decision and Order will be unsealed and available on the public record.

## DISCUSSION

### I. Jiangsu's Request for Reconsideration is Denied

#### A. Standard

To prevail on a motion for reconsideration, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). The decision to grant or deny the motion for reconsideration is within the sound discretion of the district court, especially when there has been no appellate review of the prior decision. *Mina Invest. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 250 (S.D.N.Y. 1999).

The Court's review "is narrow and applies only to already-considered issues; new arguments and issues are not to be considered." *Morales v. Quintiles Transnat'l Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998). A motion for reconsideration "is not a substitute for appeal and may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Id.* (internal citations and quotation marks omitted).

#### B. Reconsideration is Denied Because Jiangsu Has Not Demonstrated That it is Warranted

Jiangsu's motion for reconsideration is denied because Jiangsu has not established any of the four criteria for reconsideration.

First, Jiangsu does not point to any newly available evidence justifying reconsideration. Although Jiangsu has provided a few more details about the attachment proceedings it intends to pursue, that is information that Jiangsu could have provided to the Court originally. There is nothing "new" about it.

Second, Jiangsu points to no *change* in controlling law. Jiangsu has called the Court's attention to two opinions applying the Second Circuit's "adjudicative" proceeding requirement for

2

§ 1782 petitions. *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38 (2d Cir. 1996); *In re Application of Hill*, No. M19-117, 2005 WL 1330769 (S.D.N.Y. June 3, 2005). But both opinions are over eight years old, so there has been no "change" in the law in the last month. I would not be surprised to learn that Jiangsu was unaware of these decisions when it filed its petition, as Jiangsu did not discuss the Second Circuit's requirement that § 1782 discovery could only be invoked in order to obtain evidence that would be used in an "adjudicative" proceeding. But lack of awareness is not the same thing as a change in law.

Third, Jiangsu does not argue that allowing the Decision and Order to stand would amount to "manifest injustice." Nor could it, since nothing in the Court's decision and order forecloses Jiangsu from bringing on a post-judgment proceeding to enforce any arbitral award it might win, at which time the discovery it seeks would be perfectly proper. Indeed, once it has obtained an enforceable award, Jiangsu will not need to go to third parties to find out where SSL's assets are; it will be entitled to compel SSL to disclose that information.

That leaves clear error. I see none.

As the Court explained in its earlier Decision and Order, a party may take discovery under 28 U.S.C. § 1782 only if it intends to use that discovery in an "adjudicative" proceeding. Decision and Order at 4-5. The leading case on this issue is *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998), in which the Second Circuit held that a petitioner could not take discovery under § 1782 for use in a French bankruptcy proceeding because in that proceeding "the already extant judgment [wa]s merely being enforced" and "nothing [wa]s being adjudicated." *Id.* at 28.

Applying *Euromepa* to Jiangsu's petition, I held that Jiangsu could not invoke § 1782 because "neither pre-judgment attachment nor post-judgment proceedings" – the two types of

3

proceedings in which Jiangsu would use the discovery it seeks – "are 'adjudicative' in nature." Decision and Order at 6.

Jiangsu does not argue that *Euromepa*'s "adjudicative proceeding" requirement is no longer good law. Instead, Jiangsu argues that the proceeding in which it will use the information is seeks – a pre-arbitration attachment proceeding – is not a proceeding to enforce a judgment. That it is not. It is a proceeding to obtain the equivalent of a security interest. Such a proceeding is no more an "adjudicative proceeding" than is a proceeding to enforce a judgment.

Jiangsu also argues that the Court interpreted the "adjudicative" requirement too narrowly. The two cases it cites do not support that proposition, and they certainly do not support Jiangsu's claim that the Court erred by holding the proceedings in which Jiangsu would use its requested discovery were non-adjudicative. On the contrary, they support the Court's ruling.

In *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38 (2d Cir. 1996), the Second Circuit addressed a § 1782 petition filed by the appointee of an Italian bankruptcy trustee, who was seeking testimony and documents "concerning any possible funds due or which may be due to" the debtor in the bankruptcy. *Id.* at 40. The district court granted Lancaster's § 1782 petition and the party from whom Lancaster sought to take discovery appealed. *Id.* at 39. On appeal, the Second Circuit affirmed, holding that the petition for discovery satisfied all of § 1782's statutory requirements. The Court's discussion of the adjudicative-proceeding requirement, in its entirety, was this: "A bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated." *Id.* at 42.[1]

---

[1] To the extent that *Lancaster* might be read to suggest that all proceedings related to a bankruptcy are "adjudicative," that is obviously not correct: *Euromepa* also arose in the context of a bankruptcy, but the discovery was sought for use in a post-adjudication enforcement proceeding – which, the Second Circuit held, was not itself "adjudicative."

4

In a pre-judgment attachment proceeding, by contrast, nothing is "adjudicated" – that is, the relative rights and responsibilities of competing parties are not sorted out in such a proceeding. All that happens is that identified property becomes security for the enforcement of a judgment that may be entered somewhere down the pike. That is no more "adjudicative" than an action to obtain enforcement of a judgment is "adjudicative."[2]

The other case cited by Jiangsu is *In re Application of Hill*, No. M19-117, 2005 WL 1330769 (S.D.N.Y. June 3, 2005). That, too, was a request for discovery for use in a foreign bankruptcy proceeding. In *Hill*, the liquidators of Hong Kong companies sought to take discovery of documents relevant to the financial conditions of the debtors. *Id.* at *1-2 The party opposing the petition argued that the bankruptcy proceeding was not "adjudicative" because the liquidators could not assert claims against third parties in the bankruptcy proceeding, but only in separate proceedings. *Id.* at *4. My colleague Judge Holwell rejected that argument. He concluded that the purpose of a bankruptcy under Hong Kong law was to "receive, evaluate and adjudicate creditor claims" against the bankrupt – that is, to adjudicate "who got the goodies," as my law professors used to put it. Whether or not actions against third parties could as be filed as part of the bankruptcy was entirely beside the point. *Id.*

Significantly, in both *Lancaster* and *Hill*, the courts specifically recognized that mere enforcement actions are not adjudicative, and so do not provide a basis for taking discovery under § 1782. *See Lancaster*, 90 F.3d at 41-42; *Hill*, 2005 WL 1330769, at *3-4.

The issue raised by this application is whether pre-judgment attachments are more like the bankruptcy proceedings described in *Hill* and *Lancaster* or more like proceedings to enforce

---

[2] It does not appear that the party opposing the petition in *Lancaster* contested the issue whether a bankruptcy was an adjudicative proceeding.

5

judgments. The answer is obvious. Adjudicative proceedings are proceedings that determine the relative rights and responsibilities as between two or more parties. The adjudicative proceeding as between Jiangsu and SSL will be the London arbitration (assuming one is ever commenced). Any pre-award attachment proceedings will be in the nature of obtaining security against the day when that adjudicative proceeding eventually concludes. Such a proceeding does not determine the relative rights and responsibilities as between the parties; it does not "adjudicate" anything. As a result, under existing precedent § 1782 cannot be used to obtain discovery in aid of such a proceeding.

In so ruling, this Court recognizes that maritime attachments are a time-honored method of obtaining security in advance of a judgment, in a context where the assets that could be used to enforce a judgment were known to sail away before judgment could be obtained. But that does not transform a pre-judgment attachment proceeding into an "adjudicative" one. Unless and until either Congress or the Second Circuit carves out an exception in admiralty to the "adjudicative proceedings" limitation on resort to § 1782 discovery, there is no reason for me not to follow the law as articulated in *Euromepa* – especially when it is quite clear that Jiangsu could not invoke § 1782 after obtaining an award in order to take enforcement-related discovery from third parties. Given that indisputable fact, it is hard to see why it should be allowed to take such discovery today – not just prior to the entry of a favorable award, but prior to the commencement of an arbitration at all![3]

---

[3] Jiangsu's continuing failure to commence a London arbitration only confirms this court's belief that the real purpose behind its discovery request is to see whether there are any assets worth pursuing before it starts an "adjudicative" proceeding.

6

## II.    The Decision and Order Will Be Unsealed

There is a "presumption of immediate public access" to judicial documents "under both the common law and the First Amendment." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006). The First Amendment presumption creates a "high[] burden" on a party opposing public access, which "can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Id.*

The Second Circuit has articulated a three-step process for determining whether to place documents under seal. *Id.* at 119-20.

First, the court must determine whether the documents are "judicial documents." *Id.* at 119 (citing *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir.1995)). The presumption of access applies only to those documents "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quoting *Amodeo I*, 44 F.3d at 145).

Second, if the documents at issue are judicial documents, the court must determine how much weight to assign the presumption of public access. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *United States v. Amodeo* (*Amodel II*), 71 F.3d 1044, 1049 (2d Cir.1995)) (alteration in original).

Third, the court must balance the presumption of access against countervailing factors, including "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Id.* at 120 (quoting *Amodeo II*, 71 F.3d at 1050)).

7

Here, the presumption of public access obviously attaches and carries substantial weight. The document at issue is a judicial opinion – an item that is not only "relevant" to the judicial function but essential to it. "An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982); *see also Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.*, No. 04 CIV. 5044, 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005). A judicial opinion falls at the far end of the "continuum" noted in *Lugosch*. 435 F.3d at 126. It "directly affect[s]" a judicial proceeding because it determines the outcome of the proceeding. *Id.* In this specific case, disclosure would seem to be particularly important, because this Court is aware of decisions from other judges of this Court, some of which reach the same conclusion as this Court did, and some of which do not. Judges considering whether to grant § 1782 applications in the future are best served by having access to all such decisions, not just some of them.

Against this strong presumption, Jiangsu argues that public disclosure of the Decision and Order would compromise its ability to obtain pre-judgment security for a potential arbitration award or to enforce any award that might be entered. It argues that releasing the Decision and Order will alert Mingli and SSL to its litigation strategy and that those entities will be able to hide their assets by moving them or transferring their ownership to different parties.

Jiangsu's concerns are not trivial, but they fail to overcome the presumption of public access to judicial documents.

First, if events are truly as Jiangsu has described, then SSL or Mingli should not be surprised to be served with a demand for arbitration. If those entities expect to lose in arbitration, then they already have a significant incentive to hide their assets. Releasing the Decision and Order on the public record would not substantially increase that incentive.

Second, even if SSL or Mingli were unsure about the possibility of arbitration, Jiangsu's lawsuit is a matter of public record. Anyone can access the docket electronically through PACER and see that Jiangsu is a plaintiff in a lawsuit naming Success Superior Limited as a defendant. Furthermore, by accessing the docket, anyone can see that the first entry is titled "PETITION FOR AN ORDER ALLOWING DISCOVERY PURSUANT TO 28 USC 1782." Though one cannot know from the caption of the lawsuit and the title of the first docket entry exactly what Jiangsu seeks to take discovery of, a reasonably competent attorney could infer the nature of Jiangsu's request, and SSL and Mingli could hide any assets that they think Jiangsu would learn of through a petition for discovery. Releasing the Decision and Order does not materially change that conclusion.

Third, while the risk of hiding assets is real, it is one that all parties to litigation face, especially in the context of commercial disputes. It is hardly the kind of "exceptional" interest that justifies withholding the basis of the Court's decision from public scrutiny. *Joy*, 692 F.2d at 893.

9

## CONCLUSION

For the foregoing reasons, Jiangsu's request for reconsideration of the Decision and Order is denied. The Clerk of the Court is directed to unseal the Decision and Order (Docket #6). This opinion will not be sealed. The Clerk of the Court is further directed to close the case file.

Dated: January 30, 2015



U.S.D.J.

BY ECF TO ALL COUNSEL